UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 16-1005 JGB (KKx)** | Date | July 25, 2016 |
|---|---|---|---|
| Title | ***Beverly Porras et al. v. Sprouts Farmers Market, LLC et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order: (1) DENYING Plaintiffs' Motion to Remand (Dkt. No. 17); and (2) VACATING the August 1, 2016 Hearing (IN CHAMBERS)**

Before the Court is Plaintiffs' motion to remand the action to California Superior Court for the County of Riverside.  (Dkt. No. 17.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After consideration of the papers filed in support of, and in opposition to, the motion, the Court DENIES the motion.  The August 1, 2016 hearing is VACATED.

# I.   BACKGROUND

This putative class action arises out of a "phishing" scam wherein an employee of Defendant Sprouts Farmers Market ("Sprouts") inadvertently disclosed the personal financial information of thousands of Sprouts employees to a criminal scammer.  Two Sprouts employees, Plaintiffs Beverly Porras and Leticia Stocks ("Plaintiffs"), initiated this putative class action on behalf of current and former Sprouts employees against Defendants Sprouts, SFM, LLC, and fictitious Defendants 1 through 20 (collectively, "Defendants" or "Sprouts") on April 25, 2016 in California Superior Court for the County of Riverside.  (Complaint, Dkt. No. 1-1 at 30.)  On April 27, 2016, Plaintiffs filed a First Amended Complaint. ("FAC," Dkt. No. 1-1 at 2.)  Plaintiffs allege seven causes of action against Sprouts: (1) negligence; (2) breach of implied contract; (3) invasion of privacy by public disclosure of private facts; (4) breach of confidentiality; (5) unjust enrichment; (6) violation of the California Customer Records Act; and (7) Violation of the California Unfair Competition Law.  (See FAC.)

On May 17, 2016, Defendants removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA").  (Notice of Removal, Dkt. No. 1.)  On June 13, 2016, Plaintiffs

filed a motion to remand the action to state court.  (Motion, Dkt. No. 17.)  Defendants opposed
the motion on June 27, 2016.  (Opp., Dkt. No. 23.)  Plaintiffs filed a reply memorandum on July 5,
2016.  (Reply, Dkt. No. 25.)

## II.   LEGAL STANDARD

CAFA vests federal district courts with original jurisdiction of any class action in which
minimal diversity of citizenship exists between at least one member of the putative class and at
least one defendant, the class consists of at least 100 members, and the matter in controversy
exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d).  A defendant seeking
to remove a case to a federal court must file in the federal forum a notice of removal "containing
a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  A defendant's
notice of removal need include only a plausible allegation that the amount in controversy exceeds
the jurisdictional threshold.  Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547,
554 (2014).  Evidence establishing the amount in controversy is only required when the plaintiff
contests, or the court questions, the defendant's allegation.  Id.

When a plaintiff contests a defendant's allegation that the amount in controversy exceeds
$5 million, a defendant seeking removal must demonstrate, by a preponderance of evidence, that
the aggregate amount in controversy exceeds the jurisdictional threshold.  Dart Cherokee, 135 S.
Ct. at 553-54.  A defendant can satisfy this burden by submitting evidence outside the complaint,
including affidavits or declarations, or other "summary-judgment-type evidence relevant to the
amount in controversy at the time of removal."  Ibarra v. Manheim Investments, Inc., 775 F.3d
1193, 1197 (9th Cir. 2015).  The amount-in-controversy requirement is "tested by consideration
of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions
underlying the defendant's theory of damages exposure."  Id. at 1198.

The removal statutes are construed restrictively, however, and the district court must
remand the case if it appears before final judgment that the court lacks subject matter
jurisdiction.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941); 28 U.S.C. §
1447(c).  However, no presumption against removal exists in cases invoking CAFA, which
Congress enacted to facilitate adjudication of certain class actions in federal court.  Dart
Cherokee, 135 S. Ct. at 554.

## III.   DISCUSSION

Plaintiffs contend that Sprouts has failed to prove by a preponderance of the evidence that
the amount in controversy is greater than $5 million.  (Motion at 1.)  Sprouts disagrees,
calculating that the amount in controversy in this case is at least $6,258,062.25.  (Opp. at 2.)

### A. Proposed Class Size

Plaintiffs seek to represent a class of current and former Sprouts employees in California
whose personal or financial information was compromised as a result of the March 2016 data

---

breach. (FAC ¶ 20.) Sprouts contends that such a class consists of 8,719 persons. (Opp. at 3-4.) In support of this calculation, Sprouts submits the declaration of Jay R. Andrews, Sprouts' Labor & Employment in-house counsel. (See Andrews Decl., Dkt. No. 23-2.) Andrews declared that in March 2016, the IRS W-2 forms for a number of Sprouts employees were sent to unknown criminals in response to a phishing scam. (Id. ¶ 2.) In response, Sprouts notified the current or former employees that had been affected by the W-2 incident and created a list of the notified employees. (Id. ¶ 3.) The list contained, among other things, the addresses of the current or former employees who had been notified. (Id.) Andrews declared that he personally reviewed the list of the Sprouts employees who were notified of the scamming incident and confirmed that the list contained the names of 8,719 Sprouts employees with California residence addresses. (Id. ¶ 4.) Andrews also declared that he personally reviewed the email transmission in which the W-2 forms were sent in response to the phishing email and confirmed that the notification list reflects the same employees whose W-2s were affected. (Id. ¶ 5.)

Plaintiffs object to Andrews' declaration on the grounds that his statements lack foundation, constitute inadmissible hearsay, and violate the best evidence rule. (Reply at 2-3; see also Evidentiary Objection ¶ 1, Dkt. No. 26.) Plaintiffs would have the Court use estimates contained in Sprouts' SEC filings, which would amount to a proposed class of about 7,600. (Motion at 3-4.) The Court is not persuaded by Plaintiffs' arguments. Rather, Andrews' declaration is the kind of "summary-judgment-type" evidence contemplated by the Ninth Circuit in Ibarra. See 775 F.3d at 1197. Andrews described his employment relationship with Sprouts – Labor & Employment in-house counsel – which is precisely the type of position that would confer upon Andrews personal knowledge about Sprouts' employment business practices. (Andrews Decl. ¶ 1.) Andrews declared that he personally reviewed the list of affected Sprouts employees who were sent written notification of the incident and confirmed that the list contained 8,719 employees with California residence addresses. (Id. ¶ 4.) Moreover, he compared that list with the email transmission to the scammer in which the W-2 forms were sent and confirmed that the notification list accurately reflects the same employees whose W-2s were affected. (Id. ¶ 5.) This is sufficient. The Court finds Andrews' declaration does not lack foundation, is properly supported by personal knowledge, and does not contain inadmissible hearsay. Cf. Townsend v. Brinderson Corp., No. CV 14–5320 FMO, 2015 WL 3970172, *5 (C.D. Cal. June 30, 2015). Accordingly, Plaintiffs objection to Andrews' declaration is overruled, and the Court will use Defendants' estimate of the proposed class: 8,719 Sprouts employees.

**B.  Credit Monitoring**

One of the injuries Plaintiffs identify in the FAC is the cost of "finding and buying services to prevent identity theft and monitor their credit." (See FAC ¶¶ 49, 58, 67, 72, 85, 97.) For that reason, in their Notice of Removal, Defendants estimate the cost of providing the proposed class free credit monitoring for a period of three years. Defendants estimated that three years of free credit monitoring would cost $15.95 per month per class member and therefore places $5,006,449.80 in controversy should Plaintiffs be successful in this action. (Notice of Removal § E.) Defendants chose the monthly price of $15.95 by reviewing the advertised monthly rates for

credit monitoring services by three national credit-reporting agencies: Equifax, TransUnion, and Experian, whose rates ranged from $14.95 to $19.95 per month.  (Id.)

In their Motion, Plaintiffs do not dispute the estimated monthly cost of credit monitoring services, but instead claim that Defendants' estimate of three years of monitoring is flawed because Defendants have already agreed to provide one year of such services.  (Motion at 4.)  As such – assuming a class size of 8,719 – only $3,337,633.20 could reasonably be in controversy.  (Id.)

The Court is not persuaded by this logic.  The FAC does not identify a period of time during which Plaintiffs seek to have their credit monitored and/or their identity protected.  Defendants chose three years as a conservative estimate.  (Notice of Removal § E, "Multiplying just the cost of providing three years of credit-monitoring services…" (emphasis added).)  Increasing that estimate to four years – the one year Defendants are already providing plus an additional three years – is not unreasonable.

In opposition to this Motion, Defendants submit the declaration of Paul Karlsgodt, counsel for Sprouts, whose firm is also representing Sprouts in three other putative class actions arising out of the same phishing scam.  (Karlsgodt Decl. ¶¶ 2, 5, Dkt. No. 23-1.)  Karlsgodt provides additional support for the estimated monthly cost of credit monitoring services of $15.95, (id. ¶ 8), and attaches a Joint Proposed Scheduling Order in one of the related putative class action lawsuits wherein counsel for plaintiffs in that action is seeking credit monitoring protection for each class member for 30 years at a cost of $25 per month, (id. ¶ 7, see also Ex. A).[1]  The Court finds persuasive the fact that plaintiffs in a related action arising out of the exact same injury are seeking 30 years of credit monitoring and identity theft protections.  As such, for purposes of calculating the amount in controversy in this case, the Court finds it reasonable to include in the amount in controversy the cost of providing each class member just four years of credit monitoring protection.  See Ibarra, 775 F.3d at 1198 (holding that defendants may use "reasonable assumptions" to support their theory of damages).

The amount reasonably placed in controversy is therefore $5,006,449.80 ($15.95 x 12 months x 3 years x 8,719 class members).  Because the amount reasonably in controversy in this case meets the jurisdictional threshold set by CAFA, the Court need not analyze Defendants' estimate of attorneys' fees.  Plaintiffs' motion to remand the action to state court is DENIED.

///

---

[1] Plaintiffs object to the inclusion of the Joint Proposed Scheduling Order from the related action on the grounds that it is irrelevant.  (Evidentiary Objection ¶ 2, Dkt. No. 26.)  The objection is overruled.  That plaintiffs in a related lawsuit – which alleges the same injury arising out of the same phishing scam – seeks credit monitoring services for 30 years is directly relevant to the amount in controversy in this case.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to remand.  (Dkt. No. 17.)

Pursuant to the parties' stipulation to stay proceedings pending a motion to transfer and consolidate related actions which is currently before the Judicial Panel on Multidistrict Litigation, (Dkt. No. 28), the action is STAYED pending resolution of that motion.

The August 1, 2016 hearing is VACATED.

**IT IS SO ORDERED.**